# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

**VICKI YOUNG,**

    **Plaintiff,**

     **v.**

**SUN LIFE AND HEALTH INSURANCE COMPANY,**

    **Defendant.**

**1:16-cv-00822-LJO-JLT**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW; ORDER DENYING REQUEST TO CONSIDER EXTRINSIC EVIDENCE**

**(Dkt. Nos. 36, 37, 38, 39, 40, 41, 42, 43)**

## I. <u>INTRODUCTION</u>

This is an action for recovery of long term disability benefits under the federal Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Pursuant to Section 502 of ERISA, a plan participant may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Defendant Sun Life and Health Insurance Company[1] ("Sun Life" or Defendant) terminated Plaintiff Vicki Young's ("Young" or Plaintiff) long term disability benefits effective on March 31, 2015. Young appealed and Sun Life notified Young on February 24, 2016 that it would uphold its decision to terminate her benefits. On June 13, 2016, Plaintiff filed this suit. (ECF No. 1).

On September 19, 2017, Plaintiff filed a Rule 52 motion for judgment (ECF No. 38-1, "Pl. Br.") and Defendant filed its opening merits trial brief. (ECF No. 36, "Def. Br."). Defendant concurrently lodged a 1,051 page administrative record with the Court. (ECF No. 37). On October 17, 2017, both parties filed responses to each other's respective submissions. (ECF No.

---

[1] Defendant states it was erroneously sued under this name and the appropriate entity is Sun Life <u>Health and Insurance</u> Company (U.S.). (ECF No. 13). However, Defendant refers to itself as Sun Life and Health Insurance Company (U.S.) in its Answer (ECF No. 11 at 1) and brief (ECF No. 36 at 1). For the purposes of this order, the Court refers to Defendant as Sun Life.

41, "Pl. Opp."; ECF No. 42, "Def. Opp."). Plaintiff also made a request for the court to consider extrinsic evidence (ECF No. 40) and the parties disagree as to whether the Court must limit itself to the administrative record or may consider evidence outside the administrative record. (ECF No. 43). Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

The Court must determine whether Sun Life abused its discretion when it terminated Young's long term disability benefits on the basis that she was not totally disabled within the meaning of her ERISA-governed insurance plan. The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g). Having considered the record in this case, the parties' briefing, and the relevant law, the Court concludes that Sun Life abused its discretion when it terminated Young's long term disability benefits. The following constitutes the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure.[2] To the extent that any findings of fact are included in the conclusions of law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the findings of fact section, they shall be deemed conclusions of law. Additionally, Plaintiff's request to consider extrinsic evidence is denied.

## II. <u>PLAINTIFF'S REQUEST TO CONSIDER EXTRINSIC EVIDENCE</u>

Plaintiff's Rule 52 motion for judgment was accompanied by a request for the Court to consider extrinsic evidence in the form of two items: (1) a letter from Dr. Matthew Berry dated December 1, 2016 clarifying an allegedly ambiguous attending physician statement that is part of the administrative record in this case; (2) a web print-out explaining the use of Plaintiff's prescribed medication of Plaquenil. (ECF No. 39, 40). Defendant argues that such extrinsic evidence should not be considered by the Court because Plaintiff was procedurally deficient in complying with deadlines set by the Court and the evidence is not permissibly under the abuse of discretion standard. (ECF No. 43).

---

[2] *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir.1985) (factual findings made by a judge "must be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.") (internal citation omitted).

The Court here ordered that "[a]ll non-dispositive pre-trial motions, *including any motions to augment the record*, shall be filed no later than April 21, 2017... No written motions shall be filed without the prior approval of the assigned Magistrate Judge." (ECF No. 21 at 2) (emphasis added). Plaintiff produced Dr. Berry's December 2016 letter to Defendant in supplemental initial disclosures on April 13, 2017. (ECF No. 43-1, 43-2). However, Plaintiff made no motion to augment the record on or before April 21, 2017, and did not explain why the deadline in the scheduling order was not met when she made the current request for extrinsic evidence to be considered on September 19, 2017. Under Federal Rule of Civil Procedure 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause exists when the moving party demonstrates he cannot meet the deadline of the scheduling order despite exercising due diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992); *see also, Davis v. Calvin*, No. CIVS071383FCDEFBP, 2008 WL 4287149, at *1 (E.D. Cal. Sept. 10, 2008). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. Here, Plaintiff has not given any explanation for why it was unable to meet the scheduling order deadline to file such a motion even though she had Dr. Berry's letter in her possession prior to the deadline. The Court finds no good cause for why such evidence should be considered after the deadline set by the court. As such, the Court denies Plaintiff's request to consider extrinsic evidence.

## III. <u>FINDINGS OF FACT</u>

### A.    <u>The Plan</u>

Sun Life issued a policy of insurance (the "Policy") to Young's former employer, Platinum Home Mortgage Corporation ("Platinum"), providing long term disability ("LTD") benefits to plan participants under the Platinum Home Mortgage Corporation Group Long Term Disability Plan. (Administrative Record ("AR") 180). Young was a participant under the Plan. (Def. Br. at 1).

Under the Policy, a participant qualifies as "totally disabled" during the elimination period and the first 24 months of benefit eligibility, if he or she is "unable to perform all the material and substantial duties of [their] Regular Occupation." (AR 158). After disability benefits

have been payable for 24 months, a person remains "totally disabled" if he or she is "unable to perform the duties of Any Occupation." (*Id.*). "Any Occupation" is defined as: "[a]ny gainful occupation that you are qualified for or may reasonably become qualified for by education, training or experience. Your level of earnings from your prior occupation will be considered in determining any occupation." (AR 153). The Policy required that Young be under the continuing care of a physician by visiting a physician "whose medical specialty is the most appropriate specialty to evaluate, manage or treat [her] Sickness or Injury" and "receive care and treatment as frequently as is medically necessary." (AR 154).

As discussed below, Young received disability benefits from September 2010 until Sun Life determined she no longer qualified for benefits under the terms of the Policy beyond March 2015. Accordingly, Young was subject to the "any occupation" provision at the time of the ineligibility determination.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

### B. Sun Life Approves Disability Benefits for Young and Social Security Benefits Are Approved

Young began work as a mortgage consultant for Platinum in September 2009. (AR 222). In the Spring of 2010, Young began experiencing worsening symptoms of fibromyalgia. (AR 1016). Young applied for disability benefits in August of 2010. (AR 246). An Attending Physician Statement ("APS") was submitted by Dr. Sumeet Bhinder shortly thereafter indicating a diagnosis of fibromyalgia which caused Young to cease working as of July 1, 2010. (AR 1051). The APS indicated that objective findings of her diagnosis included lab work from June 25, 2010, and further indicated that Young could sit for 30-40 minutes at a time, stand or walk for 20 minutes, and that Young experienced fatigue and severe joint and muscle pain. (AR 1051; *see also* AR 1016-19). Appointment notes from her June 25, 2010 appointment indicate that "Musculoskeletal examination reveals multiple tender points of fibromyalgia." (AR 1016).

Sun Life obtained employment information from Young's employer and copies of her medical records. (AR 109). In December 2010, Sun Life performed a nurse consultant review which summarized the data as follows: "Claimant is a 66 year old female with a medical history significant for past gastric bypass, depression, urge incontinence, degenerative disc disease, s/p past back surgery in 1995, arthritis/Sjorgen's treated with Plaquenil, and fibromyalgia treated with Lyrica and PT." (AR 994). The review concluded that the medical documentation supported a finding of disability which precluded Young from performing "full time sedentary activity on a sustained basis." (AR 994-95). Upon review of the records and submissions, Sun Life approved Young's claim and advised her of the approval by letter dated December 22, 2010, indicating a benefits commencement date of September 29, 2010. (AR 987-91).

With Sun Life's assistance, Young applied for and received Social Security benefits. (AR 187). Young's Social Security benefits were initially denied on March 18, 2011[3] but it appears

---

[3] In its denial letter the Social Security Administration found: "Though you do have discomfort of your joints and muscles, the evidence shows you are still able to move about and to use your arms, hands and legs in a satisfactory manner. The evidence does not show any other impairment which would significantly restrict you from performing work related functions." (AR 186).

that Young appealed.[4] On May 27, 2012, Young was awarded Social Security disability benefits indicating that the Social Security Administration found her to be disabled under its rules as of January 20, 2011. (AR 188). Under Sun Life's Policy, her Social Security benefits constituted "Other Income" and reduced the amount of LTD benefits she received from Sun Life. (AR 756). Young repaid Sun Life the overpayment of benefits which resulted from her receipt of a retroactive Social Security award. (AR 730).

On February 23, 2012, Sun Life advised Young that in order to continue to remain eligible to receive disability benefits after September 28, 2012 under the terms of the Policy, she would have to establish her inability to perform "any occupation" based on her education, training, or experience. (AR 771-72). In order to complete the review pursuant to a change in definition to "any occupation," Sun Life requested updated medical records from Young and updated claims forms. (*Id.*). Sun Life also had Dr. Lee Okurowski complete a clinical file review which was submitted to Sun Life on September 18, 2012. (AR 703-12).[5] On September 21, 2012, Sun Life advised Young that it was still processing her claim for disability benefits under the change in definition effective after September 28, 2012. (AR 715). Following the review of the updated information, it appears that Young's claim was approved under the "any occupation" definition of total disability. (AR 109).[6]

---

[4] The parties did not reference, and the Court did not locate, documents concerning the appeal of the Social Security Administration's initial denial. Nor does it appear that Sun Life obtained the Social Security file. (Def. Opp. at 16).

[5] Sun Life also hired an outside firm to conduct a background check and surveillance on Young. (AR 926-29; 812-16). Young was under surveillance for two days in June 2011 and three days in March 2012. (*Id.*). Defendant points out that in March 2012 she was observed driving to WalMart, shopping for 15 minutes, and returning to her vehicle while on her cellphone. (Def. Opp. at 6). Defendant's roundtable notes concerning the investigation and surveillance in 2011 and 2012 state that it revealed "no significant activity." (AR 727).

[6] It is not clear from the record when exactly Sun Life approved the continuation of benefits under the "any occupation" definition but Sun Life's appeal denial letter states that it did. (AR 109). A letter from Sun Life on February 21, 2013, indicates that it was missing a form needed to make its determination (AR 655) and the Court infers that at some point after this Sun Life approved her claim under the "any occupation" definition.

Between 2014 and the termination of benefits in April 2015, Young continued to see her treating physician, Dr. Martin Berry, and the record includes his progress notes from Young's appointments.[7] On January 21, 2014, Young met Dr. Berry, and he noted that the musculoskeletal examination included multiple trigger points, that Young had chronic pain, and she continued with good days and bad days. (AR 614). On February 25, 2014, Young again met with Dr. Berry whose progress notes of the appointment indicated Young continued with chronic pain, stiffness, fatigue and poor memory. (AR 612). In early March 2014, Young submitted a supplemental statement of disability to Sun Life that included a statement from Dr. Berry which indicated he hoped Young would be able to return to work in August 2014. (637-38). Describing how the symptoms limited Young's ability to work, Dr. Berry stated "activities are aggravated by physical and emotional stress" and that Young has psychiatric impairment with respect to her decision-making if she is hurried or rushed. (*Id.*). Dr. Berry also indicated that Young was taking hydrocodone, Wellbutrin, oxybutynin, ibuprofen, and temazepam. (*Id.*). A March 25, 2014 progress note states that Young felt better than she had in years and indicated that she was taking Cymbalta and Gabapentin, with varying negative side effects. (AR 610). On April 1, 2014, Dr. Berry's progress note indicates negative side effects of migraines due to her medications, as well as an assessment of fibromyalgia and chronic pain. (AR 608). An MRI was ordered. (*Id.*). On April 15, 2014, Dr. Berry's progress notes indicate Young had mild headaches and that Young was going on trip and did not want to try new medications. (AR 606). On August 25, 2014, Dr. Berry's progress note indicates that "[s]he has basically total body pain" and was experiencing intolerable side effects with Cymbalta and Gabapentin, but found Vicodin helpful although she was concerned about the side effects. (AR 604). Dr. Berry's progress notes from all these appointments also show that Young was taking multiple and varying medications to attempt to address her symptoms with varying levels of success and negative side effects. (AR 614, 612,

---

[7] While the record contains more extensive medical records and documentation of Young's treatment and condition prior to 2014, the Court finds it appropriate to focus on the time period leading up to Sun Life's termination of Young's benefits since it appears that up until this time period, the documentation submitted was sufficient for Sun Life to continue paying benefits.

606-10, 637-38). On October 20, 2014, Dr. Berry's notes indicate his assessment of fibromyalgia, chronic pain, and general fatigue-tiredness and states "[s]he can only sit for an hour at the most without having significant increased pain." (AR 602). He also indicated that he would sign the disability paperwork. (*Id.*).

On October 27, 2014, Dr. Berry completed an APS for Sun Life. Under the check boxes available to indicate the patient's progress, Dr. Berry indicated "unchanged." (AR 628-630). Additionally, Dr. Berry made the following notations on the APS concerning Young's physical abilities:

In a typical work day, patient is able to:

| | Continuously | Frequently | Occasionally | Negligible |
|---|---|---|---|---|
| Drive | ☐ | ☐ | ☑ | ☐ |
| Walk | ☐ | ☐ | ☑ | ☐ |
| Sit | ☐ | ☐ | ☑ | ☐ |
| Stand | ☐ | ☐ | ☐ | ☑ |
| Bend | ☐ | ☐ | ☐ | ☑ |
| Squat | ☐ | ☐ | ☐ | ☑ |
| Climb | ☐ | ☐ | ☐ | ☑ |
| Twist | ☐ | ☐ | ☐ | ☑ |
| Push | ☐ | ☐ | ☐ | ☑ |
| Pull | ☐ | ☐ | ☐ | ☑ |
| Balance | ☐ | ☐ | ☐ | ☑ |
| Kneel | ☐ | ☐ | ☐ | ☑ |
| Crawl | ☐ | ☐ | ☐ | ☑ |
| Reach above shoulder level | ☐ | ☐ | ☑ | ☐ |
| Lift ___5___ lbs. | ☐ | ☐ | ☑ | ☑ |
| Carry __5__ lbs. | ☐ | ☐ | ☐ | ☑ |

Is the patient capable of working within these restrictions/limitations? ............................ ☐ Yes ☐ No

**Physical Impairment**
☐ No limitation of functional capacity - (no restrictions)
☐ Medium capacity - (lifting, carrying, pushing, pulling 20-50 lbs. occasionally; 10-25 lbs. frequently; or up to 10 lbs. constantly)
☐ Light capacity - (lifting, carrying, pushing, pulling 20 lbs. occasionally; 10 lbs. frequently; or negligible amount constantly. Can include walking and/or standing frequently even if the weight is negligible. Can include pushing or pulling of arm or leg controls.)
☑ Sedentary capacity - (lifting, carrying, pushing, pulling 10 lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.)
☐ Comments (please explain): *pain fatigue*

(AR 629).

On January 20, 2015, Dr. Berry noted that Young was suffering from chronic pain and that she had inadequate results with Norco. (AR 425). On February 23, 2015, Dr. Berry's progress notes state that Young was given a referral for pain management but that she had not yet scheduled an appointment. (AR 423). On April 14, 2015, Dr. Berry's progress note states that Young "is currently on long-term disability and has wanted to go back to work, but she has many

limiting factors. Her memory has been really impaired due to the fibromyalgia, and she is concerned that it is getting worse. She will read a book and can't remember what she is reading…She has a personal trainer working with her, but she hasn't seen any significant improvement in her ability to do things." (AR 421). Young did not go see a pain management specialist until April 28, 2015, after Sun Life terminated her benefits. (AR 532-34).

### C.    <u>Sun Life's Termination of Young's LTD Benefits</u>

On April 15, 2015, Sun Life sent Young a letter terminating her benefits after March 31, 2015. (AR 408-14). Sun Life then denied Young's appeal on February 24, 2016. (AR 108-18). In making its initial determination to terminate Young's LTD benefits, Sun Life states it relied on Young's medical records, an independent paper file review by Dr. Francis Ngwa completed on March 31, 2015, and a vocational employability assessment completed by Maria Lekarczyk on April 6, 2015. (AR 408-14). With regard to the medical records, Sun Life's denial focuses on the APS completed by Dr. Berry on October 27, 2014 and states that the APS noted that "[Young] had physical capacity to perform sedentary work, with subjective complaints of pain and fatigue." (AR 409).

To conduct his review, Dr. Ngwa was provided with Dr. Berry's progress notes from January 2014 to January 2015, the October 27, 2014 APS, and lab results from January and December 2014. Sun Life's determination letter asserted that Dr. Ngwa "stated that there is no basis for you being unable to perform sustained sedentary work." (AR 410). Dr. Ngwa's review noted that the records indicated complaints of continued chronic pain and associated conditions, as well as examinations that reported multiple trigger points in 2014,[8] that Young's condition was unchanged, and that "Dr. Berry advised a physical impairment of sedentary capacity only due to pain and fatigue with physical limitations for greater than 12 weeks." (AR 592-94). Dr. Ngwa concluded that Young was "capable of performing sustained sedentary activity for 8 hours per day, 40 hours per week" and also that "subjective symptoms will limit the claimant's tolerance for work, but not work capacity." (AR 596).

---

[8] The multiple trigger point test is the diagnostic criteria for fibromyalgia. (AR 594).

Ms. Lekarczyk's employment assessment identified three occupations which met Young's physical restriction of a sedentary exertion level, her qualifications, and provided a gainful wage. (AR 588-90). The assessment was based on the physical restrictions in Dr. Ngwa's report which stated Young was capable of sedentary activity for 8 hours a day, 40 hours per week. (*Id.*).

On September 22, 2015, Plaintiff filed an appeal of Sun Life's termination decision through her attorney (AR 364) and also submitted updated medical records, a statement from Young describing her condition, including her impaired critical thinking skills and inability to meet industry requirements to sell mortgage products, hospital records from Bakersfield Memorial, and pharmacy records. (AR 111).

Between the time Sun Life terminated Young's LTD benefits and the time her appeal was denied, Young continued to seek treatment for fibromyalgia and pain. (AR 392-93, 417, 419, 532-34). She also went to the emergency room in June 2015 because she suspected she was having a heart attack, which was later described as a stress heart attack. (AR 365-89). The cardiologist who treated Young during the incident filled out an APS in August 2015 which indicated that Young had restrictions for an 8-hour work day and 5-day work week. (AR 516-18).

### D.  Sun Life Denies Young's Appeal

On February 24, 2016, Sun Life issued a letter denying Young's appeal. (AR 108-18). As part of the appeal, Sun Life requested three additional medical reviews. Dr. Heidi Klingbeil conducted a paper file review on October 27, 2015 (AR 347-52); Dr. Mehras Akhavan conducted an independent medical examination ("IME"), including an in person examination on January 14, 2016 (AR 282-93); and Dr. Sheila Schmitt conducted a paper file review to opine on any psychological limitations on February 23, 2016. (AR 119-24). In addition, Sun Life had a second employment assessment conducted by Sandra Boyd on January 29, 2016, which was based on the IME results. (AR 296-98). These are the main items discussed in the appeal denial letter as

the basis for the denial of Young's appeal along with the previously discussed items from the initial denial. (AR 108-18).[9]

Dr. Klingbeil's review stated that fibromyalgia was a "self-limiting condition," and that patients should "continue with normal activities as much as possible." (AR 352). Dr. Klingbeil concluded that there was no clinical evidence supporting functional impairments of Young's ability to work and further concluded that "the objective clinical findings do not correlate with the significant subjective symptoms of pain described by the claimant." (AR 112, 351).

Dr. Akhavan, who both examined Young in person and reviewed her medical file during the appeal process, made the following assessments:

> [T]he medical data and examination findings corroborate the reports of pain. There is documentation of neck, shoulders, knees, legs and muscle pain associated with clinical findings in the medical records. On examination, there is tenderness in the cervical spine, upper back, shoulders, knees, and legs which confirms her subjective pain complaints.
> …
> [T]he medical data corroborate difficulties with memory and concentration. There are several documentations of memory and concentration problems in the medical records.
> …
> There are combination of condition(s) [*sic*] supported by the clinical evidence that are functionally impairing (impact ADLs[10] or the ability to work); neck and upper back pain, right carpal tunnel syndrome as well as shoulders pain could potentially impact the ability in performing her ADLs and to work. … (AR 290-291).

Dr. Akhavan also concluded that Young was able to sit "4-6 hours in a full work day, with 10 minute breaks as needed every hour." (AR 291).

Sandra Boyd's employment assessment, relying on Dr. Akhavan's IME, stated "if Ms. Young can sit for 6 hours per day, the previously identified occupations remain viable vocational alternatives for her…. However, if it is determined that Ms. Young cannot sit for 6 hours per day, then she would not meet the full range of physical requirements for sedentary work and no transferable occupations would be identified." (AR 296). Ms. Boyd's assessment further noted that the IME states that there "is medical data to corroborate that Ms. Young has difficulties with

---

[9] The appeal letter also mentions a paper review that Dr. Okurowski did in September 18, 2012, which was not mentioned in the initial termination letter. (AR 109).

[10] "ADLs" stands for "activities of daily living." (AR 703).

memory and concentration, however no specific restrictions or limitations are offered with respect to her concentration and memory issues." (*Id.*).

Based on these statements, Sun Life returned to Dr. Akhavan and requested an addendum report which asked two specific questions: "1. Please comment on the maximum number of hours the claimant can sit in an 8-hour workday"; and "2. Please quantify the memory and concentration difficulties." (AR 292, 115). In response to the first question, Dr. Akhavan responded "maximum 6 hr in an 8-hour workday" and, in response to the second, Dr. Akhavan responded it was beyond the scope of his expertise and referred to "[n]eurology/psychiatry and/or psychology." (AR 292).

As a result of Dr. Akhavan's suggestion in his addendum responses that a more specialized doctor was necessary to "quantify the memory and concentration" issues noted in his IME, Sun Life referred the matter to Dr. Schmitt, a licensed psychologist. As Sun Life's appeal denial letter points out, Dr. Schmitt concluded that the "evidence does not support the presence of functional impairment that would predictably precluded [*sic*] functioning in daily activities from 04/01/2015 to 02/29/2016." (AR 116, 122). Dr. Schmitt also noted that all the records she was provided with were for physical conditions and there were no psychiatric or psychological records made available for her review. (AR 120). However, Dr. Schmitt also noted that "there is a note by Marsha Kaprielian on 7/15/15 that indicates the claimant was receiving psychiatric services. Therefore, the reported memory and concentration problems are more likely the result of her fibromyalgia, as stated by multiple providers, rather than the result of any psychiatric condition." (AR 122). Furthermore, Dr. Schmitt noted that the records she reviewed "indicate that the claimant has reported memory and concentration difficulties for many years. However, there was no evidence of a formal evaluation to assess memory and concentration difficulties in order to determine the level of severity nor evidence that a consultation with a psychiatrist or psychologist was made." (AR 123).

//
//
//

## IV. CONCLUSIONS OF LAW

### A. Standard of Review

The parties submitted a joint stipulation agreeing that the abuse of discretion standard of review applies in this matter. (ECF No. 30). The abuse of discretion standard is a "deferential standard of review." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).[11] But "a deferential standard of review does not mean that the plan administrator will prevail on the merits." *Conkright v. Frommert*, 559 U.S. 506, 521 (2010). In reviewing for an abuse of discretion, an ERISA plan administrator's decision "will not be disturbed if reasonable." *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks omitted); *Pac. Shores Hosp. v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014) ("[A]n administrator…abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations") (internal citation omitted). "[T]he test for abuse of discretion…is whether 'we are left with a definite and firm conviction that a mistake has been committed.'" *Salomaa*, 642 F.3d at 676 (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)). The standard does not permit overturning an administrator's decision "where there is substantial evidence to support the decision, that is, where there is relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Snow v. Standard Ins. Co.*, 87 F.3d 327, 331–32 (9th Cir. 1996) (internal citation omitted), *overruled on other grounds by Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir.1999) (en banc).

---

[11] An abuse of discretion review is equivalent to the "arbitrary and capricious" deferential standard of review and courts have used the terms interchangeably in the ERISA context. *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 n.2 (9th Cir. 1993), *abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006).

Plaintiff argues that Sun Life has a conflict of interest that warrants a less deferential review by the Court within the abuse of discretion rubric. (Pl. Br. at 1). "[T]he existence of a conflict of interest is relevant to *how* a court conducts abuse of discretion review." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir.2006) (en banc) (emphasis added). If an ERISA administrator both makes eligibility determinations and pays the benefits out of its own funds, a structural conflict of interest inherently exists. *Glenn*, 554 U.S. at 112; *Abatie*, 458 F.3d at 965 ("We have held that an insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest"). When an administrator has a conflict of interest, "the reviewing court must take into account the conflict and [] this necessarily entails a more complex application of the abuse of discretion standard." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 626 (9th Cir. 2009).

A court's abuse of discretion review must be "informed by the nature, extent, and effect" that any conflict of interest that appears in the record may have had "on the decision-making process." *Abatie*, 458 F.3d at 967. Such a review includes the consideration of case-specific factors, including, for example, "the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered a contrary SSA disability determination." *Montour*, 588 F.3d at 630 (citation omitted); *see also Abatie*, 458 F.3d at 968 ("[I]n any given case, all the facts and circumstances must be considered…."). The *Abatie* Court described in detail how such a weighing of factors, in the context of a conflict of interest, impacts a court's abuse of discretion review:

> An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might….The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; [or] fails to credit a claimant's reliable evidence….

*Abatie*, 458 F.3d at 968 (internal citations omitted). The *Abatie* court further explained:

> What the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records.

*Id.* at 969. A conflict of interest is more important in an abuse of discretion review "where circumstances suggest a higher likelihood that it affected the benefits decision." *Glenn*, 554 U.S. at 117. This Court reviews the case specific factors to determine what level of skepticism (if any) should be applied to Sun Life's decision to terminate Young's long term disability benefits.

## B. The Weight of the Conflict of Interest And Applicable Governing Standard

It is not disputed that Sun Life is both responsible for making eligibility determinations and paying the benefits. (Pl. Br. at 16); (Def. Opp. at 11) (citing AR 149). Correspondingly, a structural conflict of interest exists and the Court must weigh the conflict as a factor and consider the case specific factors in applying the abuse of discretion standard. *Salomaa*, 642 F.3d at 674. Plaintiff argues that Sun Life's decision should be given minimal deference because Sun Life has a structural conflict of interest and additionally because Sun Life: (1) required "objective evidence" to prove a disability based on fatigue and pain; (2) impermissibly conducted a selective review of medical evidence; (3) used misleading and biased claims forms; (4) failed to consider meaningfully Plaintiff's Social Security award; and (5) utilized medical experts who did not believe in the potentially disabling condition of fibromyalgia. (Pl. Br. at 16-18). The Court addresses these factors and whether a heightened level of skepticism must be applied in the Court's abuse of discretion review.

### 1. Required Objective Evidence

First, Plaintiff argues Sun Life's request that its file reviewer, Dr. Ngwa, provide objective medical evidence to prove total disability tainted the claim decision. (Pl. Br. at 16-17). In response, Sun Life argues that it did not deny Plaintiff benefits based on a lack of objective evidence that she had fibromyalgia, but on a lack of "medical evidence" supporting Young's claimed *restrictions and limitations*. (Def. Opp. at 13) (AR 412). The distinction is not particularly meaningful in this case. The questionnaire provided by Sun Life's to Dr. Ngwa

specifically states "please provide objective medical evidence that supports this assessment" of whether the "claimant cannot perform sustained sedentary activities for an 8 hour day, 40 hours per week." (AR 595). Sun Life's termination letter mentions that the work limitations noted by Young's treating physician "are not based on objective medical examinations but instead on your chronic complaints of pain." (AR 410). Sun Life was aware, through Dr. Ngwa's file review and otherwise, that the nature of fibromyalgia as a disease "is characterized by widespread musculoskeletal pain and tenderness in multiple specific points, associated with abnormal pain processing, sleep disturbances, fatigue, stiffness and psychological distress." (AR 595). Therefore, it is not clear what objective medical evidence Sun Life expected to receive, given that fibromyalgia is characterized mainly by subjective, self-reported symptoms such as pain. *See Cruz-Baca v. Edison Int'l Long Term Disability Plan*, No. 15-56921, 2017 WL 3888005, at *1 (9th Cir. Sept. 6, 2017) ("Pain is an inherently subjective condition, and it is unclear what objective evidence the Plan was looking for in order to establish that [plaintiff's] pain prevented her from working"). Nor did Sun Life explain what other evidence it required to substantiate Young's limitations. *Torgeson v. Unum Life Ins. Co. of Am.*, 466 F. Supp. 2d 1096, 1130 (N.D. Iowa 2006) ("it was unreasonable for [administrator] to expect [claimant] to provide 'objective evidence' of fibromyalgia or the limitations caused by that condition when [administrator] did not provide any adequate explanation of the information it sought"). Accordingly, this factor suggests a heightened level of skepticism should apply to Sun Life's decision to terminate Young's LTD benefits.

2.     Selective Review of the Medical Evidence and Claim Form

Plaintiff also argues that Sun Life selectively reviewed medical evidence both as the basis for the termination of benefits and when denying her appeal because it interpreted certain statements by her doctor, Dr. Berry, and the independent medical examiner, Dr. Akhavan, to mean she could work in a fully sedentary capacity while ignoring other statements that did not support such a conclusion. The Court agrees.

Sun Life's termination letter relies on Dr. Ngwa's file review and Dr. Berry's APS dated October 27, 2014, to support its determination. (AR 409-10, 412). The letter states: "Your own

Rheumatologist…also noted [in the APS]...that you have limitations that would commiserate with *sedentary work*." (AR 410) (emphasis added). However, the APS that is referenced indicates a "physical impairment" level of "sedentary capacity," not sedentary work capacity as Sun Life interprets. The form does not have an option for a higher level of impairment. Sun Life's file reviewer, Dr. Ngwa, relied on the sedentary capacity indication on the APS to find that he did not believe there was "objective medical evidence" that Young could not work 8 hours a day, 40 hours per week, but concurrently noted that "subjective symptoms will limit the claimant's tolerance for work, but not work capacity." (AR 596). Neither Dr. Ngwa or Sun Life seem to give weight to three aspects of the APS which seem relevant to Young's ability to work: 1) the APS states under "Progress" that Young's condition is "Unchanged;" 2) the APS states Young could sit "occasionally;"[12] and 3) the "pain fatigue" notation that is right below the sedentary capacity check box that is marked (AR 628-29). This taken together with the fact that Sun Life provided Dr. Berry with a form that does not allow for more elaboration on restrictions and limitation for work suggests that Sun Life's decision should be reviewed with heightened skepticism.[13] *See Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir. 2008) (in determining the degree of deference the district court should consider "the

_____

[12] Sun Life argues that "Young points to no authority that states that 'occasionally' sitting is inconsistent with sedentary work, especially when Berry contemporaneously and specifically affirmed that Young was capable of sedentary capacity work." (Def. Opp. at 14). However, the APS does not indicate that Young was capable of sedentary capacity *work*, but indicates a *physical impairment level* of "sedentary capacity." (AR 629).

[13] Prior APS forms that were provided to Dr. Berry by Sun Life did not have the format of the October 27, 2014, APS. Two prior APS forms from 2011 and 2012 permit the treating physician to fill in the functional limitation with a time for sitting, standing, etc. (*Compare* AR 662-64 and 982-83 *with* 628-29). While Sun Life may be correct that it was not required to use a specific form, Sun Life's selective interpretation of the October 27, 2014 APS to focus on "sedentary capacity" is indicative of potential bias in its claims handling. *See Glenn*, 554 U.S. at 114 ("[C]laims processing…falls below par when it seeks a biased result, rather than an accurate one"). Additionally, Sun Life argues that the form was not biased because it had space to provide comments as necessary, yet Sun Life did not give any weight to the "pain fatigue" comment and it did not explain why Young's pain and fatigue was not a hindrance to working. (Def. Opp. at 15).

fact that [the plan administrator] took various of her doctors' statements out of context or otherwise distorted them in an apparent effort to support a denial of benefit").

Similarly, as part of the appeal process, Sun Life selectively reviewed medical forms when it focused only on Dr. Akhavan's statement that Young's functional impairments includes sitting 4-6 hours in a full work day. (AR 291) and disregarded other statements he made that suggested work restrictions. For example, Dr. Akhavan's report states that "the medical data and examination findings corroborate the reports of pain" and "there are a combination of condition(s) supported by the clinical evidence that are functionally impairing (impact ADLs or the ability to work)." (AR 290, 291). However, Sun Life's supplemental questions to Dr. Akhavan were only interested in what the maximum number of hours Young could sit in any given day. It seems likely that this myopia was driven by Ms. Boyd's employment assessment, which stated that "*if* Ms. Young can sit for 6 hours per day" the identified occupations are viable vocational options for her. (AR 292, 114-115) (emphasis added). Sun Life appears to focus on the information that would lead to a claim denial by posing a question that focuses not on the true nature of Young's work restrictions but only on elicitation of evidence needed to reach the conclusion it desired. *Glenn*, 554 U.S. at 118 (finding it appropriate to consider administrator's emphasis on a certain medical report that favored a denial of benefits, while deemphasizing other reports that suggested a contrary conclusion in weighing the conflict of interest). This selective review is suggestive of bias influencing Sun Life's decisionmaking process which applying increased skepticsm to Sun Life's claim decision. *Montour*, 588 F.3d at 634 (where administrator's bias infiltrated the administrative decisiomaking process, it was appropriate to accord significant weight to the conflict).

### 3. Consideration of Social Security Determination

Plaintiff argues that Sun Life did not consider her favorable Social Security determination as evidence of her disability. (Pl. Br. at 18). "While ERISA plan administrators are not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was the product of a principled and deliberative reasoning process." *Montour*, 588 F.3d at 635 (internal quotation

marks omitted); *see also Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006), *aff'd Glenn*, 554 U.S. 105 (2008) (failure to consider the Social Security Administration's finding of disability "does not render the [administrator's] decision arbitrary *per se,* but it is obviously a significant factor to be considered upon review").

As Sun Life points out, the Social Security determination is mentioned in both the termination letter and the appeal letter (AR 412, 117). Sun Life states that the Social Security determination was considered but that it was not dispositive because the determination was from 2012 and may not have taken updated medical information and other items (including the IME and updated APS forms) contained in Sun Life's file into consideration. Further, Sun Life notes that the LTD policy contains conditions that are not necessarily consistent with the Social Security requirements and that Sun Life is unaware whether the Social Security Administration revisited its decision by completing an ongoing claim review. Plaintiff was also invited in the termination letter, to provide a complete copy of her Social Security file, but it does not appear that Sun Life ever received a copy of the complete Social Security record. Given the timing of Sun Life's decision in 2015 with respect to the Social Security Administration's determination in 2012, this factor does not weigh strongly in support of applying a heightened skepticism of Sun Life's decision to terminate Young's LTD benefits.

4. Utilizing Medical Experts Who Did Not Believe in the Potentially Disabling Condition of Fibromyalgia

Plaintiff also argues that Sun Life's reliance in the appeal determination on Dr. Klingbeil, who was retained by Sun Life to do a file review in October 2015, shows Sun Life's bias because Dr. Klingbeil did not believe in the disabling potential of fibromyalgia. (Pl. Br. at 18). In response Defendant argues Dr. Klingbeil did not reject fibromyalgia as a disabling condition but instead concluded Young's records did not show she was disabled as a result of the disease. (Def. Opp. at 17).

There is some indication that Dr. Klingbeil did not believe in the disabling potential of fibromyalgia when she stated in her report that fibromyalgia is considered a "self-limiting condition" and that patients should "continue with normal activities as much as possible." (AR

352). The Court finds that this factor contributes to decreasing the level of deference afforded to Sun Life. *See, e.g.*, *Yancy v. United of Omaha Life Ins. Co.*, No. CV14-9803 PSG (PJWX), 2015 WL 9311729, at *18 (C.D. Cal. Dec. 18, 2015) ("The Court finds that Defendant's use of a reviewing physician who does not believe in disability benefits for patients in Plaintiff's condition is evidence that Defendant engaged in self-dealing with respect to Plaintiff's claim").

Dr. Klingbeil also made some findings that appear inconsistent: She stated that "[a]lthough the claimant has been followed for fibromyalgia, the records did not identify any specific loss of range of motion, motor weakness, or any other provocative findings to the extent that functional impairments are reasonably supported requiring any specific restrictions and/or limitations." (AR 351). Yet on the same page of her report she noted one of the medical items she reviewed: "The disability form dated 08/31/15 recommended restrictions and limitations." (*Id.*). Furthermore, she stated: "Based on the claimant's physical exam findings, the objective clinical findings do not correlate with the significant subjective symptoms of pain described by the claimant." Later in that page Dr. Klingbeil added "[t]here are no notable inconsistencies in the claimant's self-reports or the clinical findings." (AR 351). Dr. Klingbeil only superficially explained the basis for her findings and there is no explanation for the inconsistencies contained in her review or for why she disagreed with Dr. Berry disability recommendation. *Whealen v. Hartford Life & Acc. Ins. Co.*, No. CV06-4948PSG (PLAX), 2007 WL 1891175, at *10 (C.D. Cal. June 28, 2007), *aff'd*, 332 F. App'x 443 (9th Cir. 2009) ("That [administrator] relied on [reviewing doctor's] report, which lacked an explanation for its conclusion, and at the same time ignored the reliable evidence of [treating physician's] reports, warrants applying a heightened level of scrutiny to [administrator's] claim denial").

Nor is it clear what "objective clinical findings" Dr. Klingbeil anticipated would support restrictions and limitations to work if she classifies fibromyalgia as a "self limiting condition." *Saffon*, 522 F.3d at 873 ("If [administrator] is turning down [claimant's] application for benefits based on [claimant's] failure to produce evidence that simply is not available, that too may bear on the degree of deference the district court shall accord [administrator's] decision and on its ultimate determination as to whether [claimant] is disabled"); *see also, Gilmore v. Liberty Life Assurance Co.*

*of Boston*, No. C 13-0178 PJH, 2014 WL 1652048, at *6 (N.D. Cal. Apr. 24, 2014) (where the administrative record contained multiple self-reports of pain in plaintiff's neck and right arm, the court found "the type of evidence that plaintiff did submit appears to be the best type of evidence available under the circumstances"). Accordingly, there is some indication of conflicted claims handling in relying on Dr. Klingbeil's inconsistent statements which seem to require proof where she believes none can exist. This also supports applying skepticism to Sun Life's decision to terminate Young's LTD benefits.

In sum, weighing the factors discussed above, the Court will conduct an abuse of discretion review tempered by an increased level of skepticism due to Sun Life's conflict of interest.

**C.      Sun Life's Termination Of Benefits Was An Abuse of Discretion**

Sun Life argues that because its decision is supported by substantial evidence, the Court should find that it did not abuse its discretion. (Def. Br. at 20). However, upon review of the evidence upon which Sun Life based its decision, the Court finds that Sun Life failed to adequately investigate Young's claim and failed to credit reliable evidence that could have supported a finding of continuing disability. *See Abatie*, 458 F.3d at 968-969. A benefit determination is considered to be a fiduciary act in which the administrator owes a special duty of loyalty to the plan beneficiaries. *Glenn*, 554 U.S. at 111. Sun Life had an obligation to "'discharge [its] duties' in respect to discretionary claims processing 'solely in the interests of the participants and beneficiaries' of the plan" and provide a "full and fair review" of claim denials. *Id.* at 115 (internal citations omitted). While Sun Life asserts the medical evidence showed Young was capable of working, it ignored and misinterpreted statements of her treating doctor and of its own reviewing physicians that would support a finding of disability and did not explain what Young could have done to substantiate her claim. After taking into account the increased skepticism applied to Sun Life's decision and reviewing the record, the Court finds that Sun Life's termination of Young's LTD benefits was an abuse of discretion for the reasons discussed below.

1. <u>Sun Life's Termination of Young's Benefits</u>

Sun Life focused on two main items to reach its determination that Young no longer qualified for LTD benefits: 1) Dr. Ngwa's independent file review completed on March 31, 2015; and 2) Dr. Berry's October 27, 2014, APS which Sun Life concluded showed Young "had physical capacity to perform sedentary work, with subjective complaints of pain and fatigue." (AR 409). Sun Life's assessment in its termination of benefits shows a selective review of the evidence and it does not consider or meaningfully discuss evidence that could have contributed to finding Young continued to qualify for disability benefits, including her subjective chronic complaints of pain.

### a. *Selective Interpretation and Review of Dr. Berry's APS and Records*

Most notably, Sun Life's termination letter interprets the "sedentary capacity" indication on the APS as showing that Young had sedentary capacity *to work* even though the form indicates it as a level of *physical impairment*. (AR 409). The APS was central to the denial of LTD benefits, as Sun Life, Dr. Ngwa, and Ms. Lekarczyk's employment assessment relied on Dr. Berry's "sedentary capacity" indication for the level of physical impairment as a basis for their conclusions that Young was able to work in a sedentary capacity for 8 hours a day, 40 hours per week. (AR 409, 412, 588, 596). As discussed above, Sun Life and Dr. Ngwa focus on the sedentary capacity indication, while ignoring the seemingly inconsistent statement on the APS that Young could sit "occasionally" and that her condition was "unchanged." (AR 628-629). In contrast, Sun Life's file notes upon receiving the October 2014 APS actually interpreted the form to show "just under sed capacity." (AR 33-34). Similarly, in making their determination about Young's work capacity it appears that Sun Life and Dr. Ngwa did not consider other medical records from Dr. Berry which show a level of physical impairment that is potentially inconsistent with being able to sit 8 hours a day to work. For example, Dr. Berry's progress note from Young's appointment on October 20, 2014 (only a week prior to the APS Sun Life relies on to support its termination) states "[s]he can only sit for an hour at the most without having significant increased pain." (AR 602). *Bertelsen v. Hartford Life Ins. Co.*, 1 F. Supp. 3d 1060, 1072 (E.D. Cal. 2014) (finding that administrator appears to have "cherry-picked" its evidence

which contributed to finding abuse of discretion); *see also Leger v. Tribune Co. Long Term Disability Benefit Plan,* 557 F.3d 823, 832–33 (7th Cir. 2009) (finding administrator acted arbitrarily when it "cherry-picked" statements from the plaintiff's medical history that supported the decision to terminate her benefits, while ignoring evidence to support her disability).[14]

### b. *Selective Review of Dr. Ngwa's Biased Report*

Sun Life also disregarded certain evidence in Dr. Ngwa's paper file review that would at a minimum invite further inquiry in order to ensure the "fair review of the evidence" that is required. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), *overruled on other grounds as recognized by Salomaa*, 642 F.3d at 673-74. For example, Dr. Ngwa's review noted that "[e]xaminations by Dr. Berry indicated multiple trigger points, which are diagnostic criteria for this condition, as well as a prolonged period of chronic pain and associated conditions" (AR 594), but neither Dr. Ngwa nor Sun Life credits such reports of pain when concluding Young has the ability to work 40 hours per week. *See, e.g.*, *Gilmore*, 2014 WL 1652048, at *6 (overturning denial on a de novo standard of review where administrator's doctors noted "plaintiff's reports of pain" but "disregarded those self-reports").

Sun Life instead focused on whether "objective medical evidence" supports Young's restrictions and limitations to work.[15] *See Whealen*, 2007 WL 1891175, at *14 (finding that selective consideration of certain aspects of a reviewing doctor's report and focusing only on musculoskeletal findings "weakens the credibility of [the administrator's] decision-making

---

[14] Additionally, the question on the APS form which asked Dr. Berry if the patient was capable of working within the noted restrictions/limitations, was left unanswered. (AR 629). Sun Life did not bother to follow-up in order to ensure an answer to that question, which would have clarified what limitations Dr. Berry noted when he stated that Young could only sit occasionally. (*Id.*). *See Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("Lacking necessary-and easily obtainable-information, [administrator] made its decision blindfolded") (reversing district court's grant of summary judgment to administrator).

[15] The Policy here does not have a requirement of providing objective evidence. (AR 176). *Mitchell v. Metropolitan Life Ins. Co.*, 523 F. Supp. 2d 1132, 1146 (C.D.Cal.2007), *aff'd sub nom. Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192 (9th Cir. 2010) (holding, where policy did not include requirement of objective evidence, that demanding such evidence without explanation of what would satisfy the requirement constituted an abuse of discretion).

23

process"). Dr. Ngwa states: "*There is no objective medical basis for work restrictions and individuals would be self-limited by symptoms*, the severity of which will fluctuate over time…accommodations should be individualized based on the specific aggravating factors." (AR 595) (emphasis added). Nevertheless, Dr. Ngwa concludes Young is capable of working 8 hours a day, 40 hours a week based on the lack of objective evidence (AR 596), even though he concurrently states that "[s]ubjective symptoms will limit the claimant's tolerance for work, but not work capacity." (*Id.*). Dr. Ngwa does not explain why Young's subjective symptoms are not a factor in his ultimate conclusion. If "subjective symptoms" limit an individual's "tolerance for work" then it remains unclear (if not inconsistent) for Dr. Ngwa to expect objective evidence of work restrictions. *See Whealen*, 2007 WL 1891175, at *14 (Doctor's "inconsistent statements within the same IME report provide an additional reason to cast doubt on the reasonableness of his report"). Nor is it clear what the difference between a claimant's "tolerance for work" versus "work capacity" is from his report. Dr. Ngwa's statements are unclear and inconclusive on Young's ability to actually work, particularly when considering he did not examine Young in person with regard to her subjective complaints of pain.[16] Dr. Ngwa does not address why the references to subjective pain symptoms are not a limiting factor for work capacity for Young. *See Cruz-Baca*, 2017 WL 3888005, at *1 ("It was arbitrary and capricious for [the reviewing doctor] to fail to discuss and consider [claimant's] subjective complaints of pain as evidence of her chronic pain syndrome"). Similarly, Sun Life focuses on Dr. Ngwa's conclusion that Young was able to work 40 hours a week without explaining why it disregard Young's documented subjective complaints of pain. *See Austin v. Continental Casualty Co.*, 216 F. Supp. 2d 550, 558 (W.D.N.C. 2002) ("It is the duty of the decision maker, whoever that might be, to at least explain

---

[16] *See, e.g.*, *Bergman v. Fed. Express Corp. Long Term Disability Plan*, No. 16-CV-1179-BAS(KSC), 2017 WL 4310751, at *11 (S.D. Cal. Sept. 27, 2017) (finding that an in-person examination would have been more appropriate in a case where Plaintiff had many "self-reported" or subjective complaints of pain and not conducting an in-person examination contributed to finding that administrator abused its discretion); *James v. AT & T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 883 (N.D. Cal. 2014) (same).

the basis for discrediting the subjective complaints of the claimant. If a decision maker fails to show some rational basis for his decision, a reviewing court can only assume he has none").

### c. *Disregard of Young's Subjective Complaints of Pain*

In addition, Sun Life's shift in focus to objective evidence and unexplained disregard of subjective evidence submitted is problematic when considering "all the facts and circumstances" of its termination of benefits. *See Abatie*, 458 F.3d at 968. Sun Life argues that because it required "medical evidence" of *restrictions and limitations* and not of the actual condition this is not evidence of an abuse of discretion. (Def. Opp. at 12-13, 24-25).[17] The Court finds this argument unpersuasive, especially when viewed in context of Sun Life's overall claims handling. Sun Life's termination letter states that the limitations noted by Dr. Berry are "not based on objective medical examinations but instead are based on your chronic complaints of pain." (AR 410). Sun Life did not question the credibility of Young's diagnosis of fibromyalgia or the credibility of Young's documented complaints of chronic pain,[18] but instead Sun Life concluded that there was no evidence her fibromyalgia was disabling her from working in "any occupation"

[17] The question Sun Life posed to Dr. Ngwa did in fact request that Dr. Ngwa provide "objective medical evidence that supports this assessment." (AR 595). It is not altogether clear what Defendant considers the difference between "medical evidence" and "objective evidence" to be because its denial ignores the consistent medical documentation, noted by her treating physician and Sun Life's reviewing doctors, of Young's chronic complaints of pain and prescription medication taken as a result of her pain. (AR 594-95). There is an enormous difference between *ignoring* documentation and *disagreeing* with it. Defendant cites *Kelly v. Liberty Life Assurance Co. of Boston*, No. CV-12-3304-MWF (OPX), 2013 WL 12114823, at *7 (C.D. Cal. Aug. 20, 2013) for the proposition that it is appropriate to request objective evidence to understand what limitations fibromyalgia caused. However, in *Kelly* the court noted that the administrator "repeatedly sought any objective, non-conclusory medical assessment from which limitations could be inferred." *Id.* In contrast, Sun Life did not indicate that Young had previously submitted conclusory medical assessments but only notified her of the deficiency of her submitted evidence in its termination letter. This is more suspect when considering Sun Life had approved her claim on the basis of the evidence of subjective complaints of pain for a number of years. *Id.* ("This is not a case in which the plan administrator blithely paid benefits for years and suddenly changed course").

[18] Sun Life's own independent medical evaluator, who was the only doctor besides her treating physicians that evaluated Young in person, concluded "[n]o inconsistences of self-reports were noted in the medical records or during the interview. There were no symptoms exaggerations or malingering during the exam." (AR 292).

without discussing why it suddenly disregarded her documented complaints of chronic pain. (AR 408-14; 108-18). "Defendant's decision that Plaintiff was no longer disabled was based upon a subjective opinion regarding the severity of Plaintiff's pain, notwithstanding the fact that the treating provider[] who had an ongoing relationship with Plaintiff found that her pain was disabling." *Robertson v. Standard Ins. Co.*, 139 F. Supp. 3d 1190, 1205 (D. Or. 2015) (where administrator's conflict of interest was afforded little weight court still found that administrator's review of participants LTD benefits was unreasonable); *Beckstrand v. Elec. Arts Grp. Long Term Disability Ins. Plan*, No. 1:05CV0323AWI GSA, 2008 WL 4279566, at *8 (E.D. Cal. Sept. 16, 2008) ("[Plaintiff] was never told why [certain medical findings] caused him to be disabled in 2001 but not in 2004").

Sun Life's request for objective medical evidence and its disregarding Young's subjective complaints of pain is more questionable when the Court considers that the evidence Young had submitted for over four years and which had been sufficient for Sun Life to approve her benefits in the past was unexplainably no longer sufficient. While granting benefits does not operate as an estoppel for an insurer ever changing its mind, it does provide evidence of disability at a later time. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1296 (9th Cir. 2010) ("That benefits had previously been awarded and paid may be evidence relevant to the issue of whether the claimant was disabled and entitled to benefits at a later date ...."); *see also Robertson*, 139 F. Supp. 3d at 1203 ("[W]here an insurer has previously found a claimant to be disabled…, the insurer's change in position requires some rational explanation"). Furthermore, both Dr. Berry's APS and Dr. Ngwa's review note that Young's condition was "unchanged." (AR 628, 593). *See, e.g.*, *Bertelsen*, 1 F. Supp. 3d at 1073 (finding abuse of discretion where "Defendant had been paying Plaintiff long-term disability benefits under the 'any occupation' policy, and Defendant failed to uncover any significant changes in Plaintiff's condition."); *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1164 (N.D. Cal. 2010) (on de novo review court concluded that "lack of consistent, marked progress is probative of [Plaintiff's] continuing disability").

Nor did Sun Life explain what specific evidence it was looking for to establish Young's work restrictions, if her subjective complaints of pain were no longer sufficient. "[W]here the denials [of benefits] were based on absence of some sort of medical evidence or explanation, [courts have held] that the administrator was obligated to say in plain language what additional evidence it needed and what questions it needed answered in time so that the additional material could be provided." *Salomaa*, 642 F.3d at 678 (concluding that the conflicted administrator "acted arbitrarily and capriciously, both procedurally and substantively, thereby abusing its discretion in the denial of [plaintiff's] claim"); *cf. Jordan v. Northrop Grumman Corp. Welfare Ben. Plan*, 63 F. Supp. 2d 1145, 1163 (C.D. Cal. 1999), *aff'd Jordan*, 370 F.3d 869 ("Where objective evidence is hard to establish, it can hardly be sufficient for an administrator to point to the absence, provide no way of curing this absence and, then, to deny the claim"). Even Sun Life's reviewing doctors indicate that no objective medical evidence of restrictions exist for Young's condition. (AR 595, 711). Dr. Okurwski's file review informed Sun Life of the following: "Because persons with FM have symptoms but a normal physical examination and normal findings on diagnostic testing, *there is no objective medical basis upon which to predicate work restrictions or accommodations.*" (AR 711) (emphasis added). "[C]onditioning an award on the existence of evidence that cannot exist is arbitrary and capricious." *Salomaa*, 642 F.3d at 678; *Yancy*, 2015 WL 9311729, at *20 ("The Court is further convinced that Defendant abused its discretion because under Ninth Circuit law, the imposition of an 'objective evidence' requirement is 'arbitrary and capricious' where the condition in question, such as fibromyalgia, is not capable of being measured or diagnosed by objective criteria"). Courts have recognized that "[m]any medical conditions depend for their diagnosis on patient reports of pain or other symptoms, and some cannot be objectively established until autopsy." *Salomaa*, 642 F.3d at 678 (9th Cir. 2011); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) ("[D]espite our inability to measure and describe it, pain can have real and severe debilitating effects....Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the degree of pain, as opposed to the mere existence of pain, is unsupported by

objective medical findings"). Sun Life never explained what evidence it needed from Young before terminating her LTD benefits and this further illustrates an abuse of discretion.

### 2. Sun Life's Denial of Young's Appeal

As part of the appeal, Sun Life requested three doctors review Young's medical file on differing points. Dr. Klingbeil conducted an initial paper review, Dr. Akhavan conducted an IME, and Dr. Schmitt conducted a paper review to opine on any psychological limitations. Sun Life also had a second employment assessment conducted by Ms. Boyd. While the seemingly broad scope of outside reports provide the appearance of substantial evidence for Sun Life's decision (Def. Br. at 20), Sun Life selectively reviewed the reports to support its denial of benefits. Namely, Sun Life ignored statements in Dr. Akhavan's IME which would support Young's disability and selectively asked follow-up questions that appear to setup the basis for denying Young's appeal. Additionally, Dr. Klingbeil's and Dr. Schmitt's reports are of very limited value since neither examined Young and certain of their conclusions are inconsistent with Dr. Akhavan's and Dr. Berry's findings and unsupported by explanation.

#### a. *Selective Review of Dr. Akhavan's IME*

As discussed above, Sun Life hired Dr. Akhavan to both examine Young in person and review her medical file during the appeal process. His review notably mentioned that the medical data and his examination corroborate Young's subjective complaints of pain. He also indicated that the medical data corroborate difficulties with Young's memory and concentration. He importantly reported that: "There are combination [*sic*] of condition(s) supported by the clinical evidence that are functionally impairing (impact ADLs or the ability to work); neck and upper back pain, right carpal tunnel syndrome as well as shoulders pain could potentially impact the ability in performing her ADLs and to work. …" (AR 290-91). Lastly, in response to Sun Life's question, Dr. Akhavan stated that Young was able to sit "4-6 hours in a full work day, with 10 minute breaks as needed every hour." (AR 291).

In submitting follow-up questions to Dr. Akhavan, Sun Life did not ask for clarification of Young's functional impairments that could "potentially impact" her ability to work, but only asked for clarification concerning "the maximum number of hours the claimant can sit in an 8-

hour workday." (AR 292). It is clear from the record that Sun Life did so because Ms. Boyd's employment assessment, which was based off the original IME, conditionally stated that "*if* Ms. Young can sit for 6 hours per day, the previously identified occupations remain viable vocational alternatives for her….," but that "no transferable occupations would be identified" if Young could not sit for 6 hours a day. (AR 296). Additionally, the Ninth Circuit has held "that an employee who cannot sit for more than four hours in an eight-hour workday cannot perform 'sedentary' work that requires 'sitting most of the time.'" *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016). The specific addendum question was not particularly illuminating on the nature of Young's work ability since the IME already had noted an ability to sit 4-6 hours in a day. Nor did it provide Sun Life with information about how consistently Young could work 6 hours – i.e. 5 days a week or more intermittently.[19] *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (noting "the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week"); *Lamarco v. CIGNA Corp.*, No. C 99-0561 MJJ, 2000 WL 1456949, at *8 (N.D. Cal. Sept. 25, 2000) (holding that being able to perform "sporadic tasks" does not mean someone is capable of performing "any occupation"). Young's medical records noted that sitting for extending periods of time aggravated her condition and that she had good days and bad days with her fibromyalgia. (AR 602, 614). *See, e.g., Gilmore*, 2014 WL 1652048, at *6 (on de novo review court noted that self-reports of increased pain after working 3-4 hours should have been given weight by administrator). The court finds that the logical jump from a 6 hour maximum ability to sit in any given day to a conclusion that Young was able to maintain this capacity on a regular or full time basis is "without support in inferences that may be drawn from the facts in the record." *Salomaa*, 642 F.3d at 676; *see also Jones v. Aetna U.S. Healthcare*, 136 F. Supp. 2d 1122, 1134 (C.D. Cal. 2001) ("There was therefore no evidence before the administrator indicating that [Plaintiff] could indeed perform the material duties of her job given

---

[19] The Policy defines "Full-time Basis" as a regular work schedule of at least 30 hours per week. (AR 84).

her inability to lift over ten pounds and *her limitation of taking ten minute rest breaks per hour*") (emphasis added); *Peterson v. Fed. Express Corp. Long Term Disability Plan*, No. 05-1622, 2007 WL 1624644, at \*34 (D. Ariz. June 4, 2007) ("[A] total-disability determination cannot reasonably hinge on whether an employee is minimally capable, on a good day, at the right hour, of fulfilling her job duties in a barely tolerable fashion. Qualification for employment requires an ability to work effectively and to be reliable").

Furthermore, Sun Life easily could have obtained additional information from Dr. Akhavan about Young's ability to work consistently as part of the addendum it requested. Sun Life was required to develop the record enough to understand whether the noted functional impairments actually permitted full time work beyond what Young's maximum capacity was on any given day. "A plan administrator abuses its discretion if it… fails to develop facts necessary to its determination." *Pac. Shores Hosp.*, 764 F.3d at 1042 (internal citation omitted). Despite Dr. Akhavan's findings concerning clinical evidence of functional impairments, Sun Life did not inquire into the details of those findings or credit this evidence. Sun Life's appeal determination quotes a large chunk of the IME but does not substantively address the limitations noted by Dr. Akhavan. Sun Life's "failure to credit or meaningfully distinguish this evidence indicates that its decision to terminate [] benefits was not the product of a principled and deliberative reasoning process." *Cruz-Baca*, 2017 WL 3888005, at \*2 (finding the failure to adequately consider and credit "IME—which offered reliable evidence that [Plaintiff] cannot perform sedentary work— demonstrated an abuse of discretion"); *see also Booton*, 110 F.3d at 1464 ("Had [plan administrator] requested the needed information and offered a rational reason for its denial, it would be entitled to substantial deference. But to deny the claim without explanation and without obtaining relevant information is an abuse of discretion") (citing *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538 (9th Cir.1990) (burden is on plan to obtain adequate information to make decision)); *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 807-08 (10th Cir. 2004) ("fiduciaries cannot shut their eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement…."); *Yancy*, 2015 WL

9311729, at *20 ("Defendant failed to develop facts which it apparently deemed necessary to making its determination. That failure alone may constitute an abuse of discretion").

Sun Life ignored Dr. Akhavan's statements regarding Young's functional impairments that impacted her ability to work and instead focused on the maximum number of hours she could work without fully developing the record to understand her functional impairments. This is inconsistent with providing Young with a "full and fair review" of the evidence as required by ERISA, *Salomaa*, 642 F.3d at 679-80, and as such constitutes an abuse of discretion.

### b. *Dr. Klingbeil's and Dr. Schmitt's Reports*

Courts engage in credibility determinations when conducting an abuse of discretion review. *See Abatie*, 458 F.3d at 969. "[C]ourts generally give greater weight to doctors who have actually examined the claimant versus those who only review the file, especially when they are employed by the insurer." *Backman v. Unum Life Ins. Co. of Am.*, 191 F. Supp. 3d 1053, 1066 (N.D. Cal. 2016); *Salomaa*, 642 F.3d at 676 (ascribing more weight to the opinions of physicians who personally examined the patient and described plaintiff's inability to work in detail). Dr. Klingbeil and Dr. Schmitt only conducted paper reviews and did not examine Plaintiff in person, unlike Dr. Akhavan and Dr. Berry. The inconsistencies of Dr. Schmitt and Dr. Klingbeil reports, along with their conflicting conclusions with the in-person examinations, lead the Court to conclude that these reports do not provide Sun Life with "substantial evidence" to support their determination.

Despite stating that fibromyalgia was a "self-limiting condition," Dr. Kingbeil concluded that "the objective clinical findings do not correlate with the significant subjective symptoms of pain described by the claimant" without examining her. (AR 112). Dr. Klingbeil does not explain her basis for reaching such a conclusion and the Court finds that her review is of little value because its conclusion is based on a lack of objective evidence for something she described as "self limiting." *Backman*, 191 F. Supp. 3d at 1069 ("Given the lack of an objective test to confirm the level of pain that a person is experiencing, denying a claim based on a lack of objective evidence of pain is an abuse of discretion"). Additionally, her finding that objective clinical findings do not correlate with subjective complaints is not credible when Dr. Akhavan's

and Dr. Berry's in person examinations confirmed such subjective complaints. *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, 12 F.Supp.3d 1237, 1255 (N.D. Cal. 2014) ("when an in-person medical examination credibly contradicts a paper-only review conducted by a professional who has never examined the claimant, the in-person review may render more credible conclusions"); *see also Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 297 (6th Cir. 2005) (finding abuse of discretion where administrator dismissed claimant's documented functional limitations when the individual making that credibility determination "never met or examined" the claimant). Correspondingly, Sun Life's reliance on Dr. Klingbeil's paper review to terminate Young's LTD benefits contributes to finding that Sun Life abused its discretion. *James v. AT & T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 879–80 (N.D. Cal. 2014) ("A plan's denial is arbitrary to the extent that it was based on [a consulting physician's] implicit rejection of [a] Plaintiff's subjective complaints of pain") (internal quotation omitted); *Whealen*, 2007 WL 1891175, at *13 (finding administrator acted arbitrarily and capriciously in relying on two doctors' paper file reviews who confirmed diagnosis of fibromyalgia yet rejected treating doctor's reports supporting claim of disability where reviewing doctors did not explain why they rejected treating doctor's restrictions and limitations).

Relatedly, Sun Life requested Dr. Schmitt's review pursuant to Dr. Akhavan's suggestion that a psychological specialist was necessary to quantify the "memory and concentration difficulties" that he noted in the IME and which the employment assessment mentioned as an unknown limiting factor. Her review appears to be of little value because it was self-admittedly based on limited records. Dr. Schmitt reviewed *no psychiatric or psychological records* even though she mentions that that the files she did review indicate that Claimant was in fact receiving psychiatric services. (AR 120, 122); *see Glenn*, 554 U.S. at 118 (finding that administrator's failure to provide its independent vocation and medical experts with all the relevant evidence is an appropriately serious concern in determining whether administrator abused its discretion); *Lavino v. Metro. Life Ins. Co.*, 779 F. Supp. 2d 1095, 1112 (C.D. Cal. 2011) (concluding "the basis for any psychiatric determination by [administrator] is suspect given the inadequacy of the investigation"). Nor did she examine Young in person. *Lavino*, 779 F. Supp. 2d at 1112 ("Courts

routinely discount or entirely disregard the opinions of psychiatrists who had not examined the individual in question at all or for only a limited time"). While Dr. Schmitt indicated that "[t]he records available noted that the claimant reported symptoms of anxiety and depression, as well as concentration problems and memory difficulties for several years," (AR 120) she then without explanation, and despite the lack of records or an in person exam, concludes "it is the reviewer's opinion within a reasonable degree of clinical probability that the clinical evidence does not support functional impairment due to a psychological condition." (AR 121). *See Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 905-906 (9th Cir. 2016) (finding an abuse of discretion where administrator relied on two independent physician consultant opinions neither of whom actually examined Plaintiff but found there was no evidence to establish mental functional impairments and administrator ignored supporting evidence of such mental limitations through treating physician, plaintiff's personal statement, and corroboration by a friend). Lastly, Dr. Schmitt's report was submitted to Sun Life on February 23, 2016, one day prior to Sun Life's denial of Young's appeal. The proximity of submission with Sun Life's denial suggests that Sun Life did not rely much on its conclusions in reaching its determination and relatedly did not fully inquire into the nature of the mental and concentration impairments that were documented in the record to determine if Young could work consistently for 6 hours a day. This constitutes another instance where the lack of development of the factual record contributes to finding Sun Life abused its discretion.

### 3. Sun Life Abused Its Discretion By Terminating Young's LTD Benefits

This Court' agrees that with Defendant that "Sun Life is not obligated to find that Young is disabled under the terms and conditions of the Plan simply because her treating physician offered an opinion of disability based primarily on his patient's self-report." (Def. Opp. at 20). However, as the cases Defendant cites also show, the administrator must credit "reliable evidence" and conduct a "fair review of the evidence" (*Id.*). Sun Life never found that Dr. Berry's conclusions about Young's subjective symptoms and disability were unreliable, most obviously evidenced by the fact that Sun Life approved disability for benefits for over four years, both under the "regular occupation" definition that applied during the first 24 months of benefits

and under the "any occupation" definition that applied after 24 months. However, in deciding to terminate Young's benefits, Sun Life relied on Dr. Berry's October 27, 2014 APS which was not only incomplete but was at best wholly unclear on whether Young was able to work in a sedentary capacity. Sun Life did not ask for clarification on the responses provided on the APS but instead illogically interpreted the APS to mean Young had a sedentary capacity *to work* even though it indicated a physical impairment level of sedentary capacity.

Even Sun Life's reviewing doctors, Dr. Ngwa, Dr. Klingbeil, and Dr. Schmitt noted Plaintiff's consistent reports of pain, but they disregarded those self-reports and focused on the lack of objective medical evidence to support plaintiff's claim, as did Sun Life. For Sun Life to rely so heavily on these reviewing doctors' end conclusions, without explaining why Young's subjective symptoms were no longer sufficient to support her disability is contrary to 9th Circuit precedent which recognizes the shortcomings of objective medical evidence in evaluating reports of a subjective phenomenon such as pain. *See Salomaa*, 642 F.3d at 669; *Saffon*, 522 F.3d at 872; *Caplan v. CNA Fin. Corp.*, 544 F. Supp. 2d 984, 992 (N.D. Cal. 2008) ("[Administrator's] approach of disregarding subjective evidence of pain is disapproved in Ninth Circuit precedent"). Nor does Sun Life actually explain why Young's "history of pain and pain-related treatment," as documented by the IME and her treating physician, "were insufficient to support a finding of disability" in 2015 when they had been from 2010 to 2014. *See Cruz-Baca*, 2017 WL 3888005, at *1. "Under such circumstances, to disregard [a claimant's] subjective complaints of continuing and pervasive pain was arbitrary and capricious." *Id.*; *Moody v. Liberty Life Assur. Co. of Boston*, 595 F. Supp. 2d 1090, 1099 (N.D. Cal. 2009) (overturning denial where administrator's "evaluating physicians had evidence showing consistent subjective complaints over a long period of time").

More notably, Sun Life did not fairly credit or consider the statements in its reviewing doctor's IME which noted that the medical data and his examination corroborate the subjective symptoms Young reported and that "*[t]here are combination of condition(s) supported by the clinical evidence that are functionally impairing (impact ADLs or the ability to work).*" (AR 291). Sun Life did not ask for further elaboration on this but based its appeal denial on the

statement that Young could work a *maximum* of 6 hours in any given day. At best, the evidence Sun Life relied on was inconsistent, incomplete and inconclusive to support a conclusion that Young was actually capable of consistent sedentary work. Correspondingly, Sun Life's decision to terminate Young's LTD benefits was not supported by substantial evidence, and its review was not "full and fair" as required by law. 29 U.S.C § 1133(2). Given the totality of the record, viewed through the lens of the standard of review, the Court finds that the Defendant abused its discretion when it terminated Plaintiff's long-term disability benefits.

## D.    Remedy

An ERISA claimant whose benefits have been terminated is entitled to a different remedy than a claimant whose initial application for benefits has been wrongfully denied. *Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1221 (9th Cir. 2008) (citing *Hackett v. Xerox Corp. Long–Term Disability Income Plan,* 315 F.3d 771, 775–76 (7th Cir.2003)). "[I]f an administrator terminates continuing benefits as a result of arbitrary and capricious conduct, the claimant should continue receiving benefits until the administrator properly applies the plan's provisions." *Id.*; *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001) (retroactive reinstatement of benefits is appropriate "where but for [the insurer's] arbitrary and capricious conduct, [the insured] would have continued to receive the benefits") (internal quotation marks and citation omitted). As indicated, the determination of what remedy is appropriate depends on whether benefits have been terminated or whether it is a denial of benefits (including a denial pursuant to a change in definition). *See, e.g., Demer*, 835 F.3d at 907.

Defendant's briefing seems to imply that it never approved benefits under the "any occupation" definition of total disability which became effective in September 2012. (Def. Br. at 6; Def. Opp. at 3). There is nothing in the record that indicates when Sun Life formally approved Young's benefits under the "any occupation" definition. However, in Sun Life's appeal denial letter it states:

> Following the review of the updated information, **it appears that your claim was approved beyond the change in definition** of Total Disability and Totally Disabled. To continue the review of your claim and evaluate your ongoing eligibility for LTD benefits, Sun Life periodically requested updated claim forms

and medical records. The review of the information continued to support your eligibility for LTD benefits.

(AR 109) (emphasis added).

Based on this representation in Sun Life's letter it appears that Sun Life approved Young's benefits under the change in definition to "any occupation" after September 2012. Correspondingly, the April 15, 2015 letter is appropriately characterized as a termination of continuing benefits and the appropriate remedy in this matter is a reinstatement of disability benefits.

## V. <u>CONCLUSION AND ORDER</u>

For the reasons stated above, the Court concludes that Sun Life abused its discretion by terminating Young's long term disability benefits and that her benefits must be reinstated. Any future determination of benefits shall provide for a full and fair review consistent with this opinion. Therefore, it is HEREBY ORDERED:

1.  Plaintiff's motion for judgment under Rule 52 (ECF No. 38) is GRANTED;

2.  Defendant shall reinstate Plaintiff's long-term disability benefits retroactive to the date upon which Defendant ceased paying such benefits;

3.  Within 30 days of this order's date of service, the parties shall meet and confer and submit a proposed judgment that contains the amount owed to Young;

4.  Any further motions by Young must be filed by separate motion within the time limits permitted by the Local Rules; and

5.  Plaintiff's request to consider extrinsic evidence (ECF No. 40) is DENIED.

IT IS SO ORDERED.

Dated:  __**January 8, 2018**__          _____**/s/ Lawrence J. O'Neill**_____
                                         UNITED STATES CHIEF DISTRICT JUDGE